THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **DAVID D. CROSSETT,**<br><br>Plaintiff,<br><br>v.<br><br>**TURO INC., ANDRE HADDAD, ALEX BENN, MICHELLE FANG, JEFF PLATT, LUIS BERTUCA, ALI KEEGAN, and DOES 1-10,**<br><br>Defendants. | **REPORT AND RECOMMENDATION**<br><br><br>**Case No. 1:24-cv-00140-DBB-JCB**<br><br><br>**District Judge David Barlow**<br><br>**Magistrate Judge Jared C. Bennett** |

This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Before the court are: (1) Defendants Turo Inc. ("Turo"), Andre Haddad, Alex Benn, Michelle Fang, Jeff Platt, Luis Bertuca, and Ali Keegan's (collectively "Defendants") motion to compel arbitration and stay proceedings;[2] and (2) pro se Plaintiff David D. Crossett's ("Mr. Crossett") motion to proceed in forma pauperis.[3] Based upon the analysis set forth below, the court recommends granting Defendants' motion to compel arbitration and stay proceedings and denying Mr. Crossett's motion to proceed in forma pauperis.

---

[1] ECF No. 15.

[2] ECF No. 28.

[3] ECF No. 30.

## BACKGROUND

This case arises out of Mr. Crossett's use of Turo's online peer-to-peer car sharing platform, which connects a car owner ("host") with an individual seeking to use the car ("guest").[4] To become a host or a guest ("Turo user"), an individual must create a Turo account using either the Turo website or Turo app.[5]

Mr. Crossett created a Turo account on June 3, 2024.[6] When Mr. Crossett created his account, he was required to agree to Turo's Terms of Service ("Terms") by checking a box labeled, "I agree to the terms of service and privacy policy."[7] Directly below that statement appear the words, "View terms of service and privacy policy," which were hyperlinked to the Terms.[8] If the box labeled, "I agree to the terms of service and privacy policy," had not been checked, and Mr. Crossett attempted to continue, he would have been presented with a second screen that stated, "Unable to sign up" and, "Please agree to the terms of service and privacy policy to continue."[9]

Later the same day, Mr. Crossett listed his 2024 Hyundai Elantra to be shared on Turo's platform.[10] When he did so, he was again presented with a hyperlink to the Terms and required to agree with the Terms by clicking a box that stated, "By tapping 'Agree' below, you agree to the

---

[4] ECF No. 28-1 at 3 of 57, ¶ 3.

[5] *Id*. at 3 of 57, ¶ 4.

[6] *Id*. at 4 of 57, ¶ 6.

[7] *Id*. at 4 of 57, ¶ 7.

[8] *Id*. at 4-5 of 57, ¶ 8.

[9] *Id*. at 5-6 of 57, ¶ 9.

[10] *Id*. at 6-7 of 57, ¶ 10.

Turo terms of service," and clicking on a button labeled, "Agree."[11] If he had not done so, he would have been shown a second screen with text box stating, "Please agree to the terms of service to continue."[12]

In the opening paragraph of the Terms in effect on June 3, 2024, is the statement (in bold text): "PLEASE READ THESE TERMS OF SERVICE CAREFULLY. THEY CONTAIN IMPORTANT INFORMATION THAT AFFECTS YOUR RIGHTS, REMEDIES, AND OBLIGATIONS. THEY INCLUDE AN AGREEMENT TO ARBITRATE (UNLESS YOU OPT OUT)."[13] That version of the Terms included a section entitled, "Agreement to Arbitrate," which provided:

> The Parties each agree that any and all disputes, claims, or controversies that have arisen or may arise at any time between you and Turo (including its respective subsidiaries, employees, officers, directors, agents, third-party insurance brokers or products, and third-party claims administrators) and/or any other Turo user will be resolved by binding arbitration according to the procedure set forth below. For the purpose of this Agreement to Arbitrate, "disputes," "claims," and "controversies" shall have the broadest possible meaning that will be enforced and includes, any and all disputes and/or claims that arise out of or in any way relate to your relationship with Turo, including but not limited to: (1) your use of the Services, (2) the Agreement, these Terms and/or this Agreement to Arbitrate, including the interpretation, validity, enforceability, or scope of this Agreement to Arbitrate, or (3) your use of, or access to the Services, and anything sold, offered, or purchased through the Services (such as booking, listing, or sharing a vehicle). Through this Agreement to Arbitrate, and subject to the below exceptions, the Parties intend to arbitrate all disputes or claims regardless of whether they are based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or

---

[11] *Id*.

[12] *Id*. at 7-8 of 57, ¶ 11.

[13] *Id*. at 19 of 57.

equitable theory and regardless of whether they arose or accrued before the Parties entered into this Agreement to Arbitrate. For avoidance of doubt, the Parties expressly agree that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such disputes or claims will be referred to binding arbitration and will be resolved by the arbitrator and not a court.[14]

That version of the Terms further provided that: (1) the "Agreement to Arbitrate evidences a transaction involving interstate commerce and is therefore governed by the Federal Arbitration Act [("FAA")] and the applicable procedural rules of FairClaims or [American Arbitration Association ("AAA")], as applicable";[15] (2) "[t]he arbitration will be conducted by FairClaims in accordance with its Arbitration Rules and Procedures effective at the time a claim is made";[16] and (3) "[i]n the event FairClaims declines to or is unable to adjudicate the claim, the arbitration will be conducted by the AAA under its Commercial Arbitration Rules, as modified by this Agreement to Arbitrate."[17]

That version of the Terms also included a provision that permitted a Turo user to opt out of the Agreement to Arbitrate by sending an opt-out notice to a specified email address within 30 days after the date the Turo user accepted the Terms for the first time or within 30 days after the commencement of the Turo user's first trip on Turo as a host or guest, whichever date is earliest.[18] Turo did not receive an opt-out notice from Mr. Crossett.[19]

---

[14] *Id*. at 40 of 57.

[15] *Id*. at 40 of 57.

[16] *Id*. at 41 of 57.

[17] *Id*.

[18] *Id*. at 42 of 57.

[19] *Id*. at 9 of 57, ¶ 15.

Between June 30, 2024, and August 8, 2024, Mr. Crossett participated on Turo's platform as a host and shared his 2024 Hyundai Elantra with guests three times.[20] Turo eventually suspended Mr. Crossett's account after discovering that he sent harassing and threatening messages to a guest and the guest's spouse, demanding payment of thousands of dollars, which was a violation of the Terms.[21]

Subsequently, Mr. Crossett filed this lawsuit against Turo, as well as the individual Defendants, who are all Turo employees.[22] Notably, Mr. Crossett's complaint does not include any allegations about the individual Defendants. The crux of Mr. Crossett's complaint appears to be that Turo "[a]rbitrarily and capriciously . . . terminated [his Turo] account permanently" and "accused [him] of breaking rules stated in an inaccessible contract," which "resulted in a lifetime loss of income for Mr. Crossett."[23] Mr. Crossett alleges that the contract was "inaccessible" because he is blind, and "Turo had no required . . . accommodation [under the Americans with Disabilities Act] available for him to read the contract."[24]

In response to Mr. Crossett's complaint, Defendants filed their motion to compel arbitration and stay proceedings.[25] Defendants contend that the Agreement to Arbitrate contained in the Terms requires that Mr. Crossett's claims be arbitrated and that this case be stayed pending completion of the arbitration. Mr. Crossett opposes Defendants' motion, arguing only that the

---

[20] *Id*. at 9 of 57, ¶ 16.

[21] *Id*. at 9 of 57, ¶ 17; *see also id*. at 52-53 of 57.

[22] ECF No. 1.

[23] *Id*. at 4.

[24] *Id*.

[25] ECF No. 28.

Terms are "void due to a lack of mutual agreement" because he was unable to access the Terms for the same reasons stated above.[26] Defendants replied in support of their motion.[27] Additionally, Mr. Crossett moves to proceed in forma pauperis.[28]

## ANALYSIS

As demonstrated below: (I) Defendants' motion to compel arbitration and stay proceedings should be granted; and (II) Mr. Crossett's motion to proceed in forma pauperis should be denied. Each issue is addressed in turn.

### I. Defendants' Motion to Compel Arbitration and Stay Proceedings Should Be Granted.

Defendants' motion to compel arbitration and stay proceedings should be granted for two reasons. First, the issue of the arbitrability of Mr. Crossett's claims is reserved to the arbitrator.

---

[26] ECF No. 29 at 1.

[27] ECF No. 31. After Defendants filed their reply, Mr. Crossett filed a second memorandum and third memorandum in opposition to Defendants' motion. ECF No. 32; ECF No. 34. The court refuses to consider those additional memoranda for two reasons. First, they are not permitted by the court's local rule governing motions. DUCivR 7-1(a)(4)(D)(i) (providing for only a motion, response, and reply). Second, Mr. Crossett did not obtain leave of court prior to filing either memorandum. DUCivR 7-1(a)(9) ("Unless ordered otherwise, the court will not consider additional memoranda."). Although Mr. Crossett did include a request to file his additional memoranda in his third opposition memorandum, the court will not consider that request because it was made after the memoranda were already filed and was not made by separate motion. DUCivR 7-1(a)(3) ("A party may not make a motion . . . or a cross-motion in a response or reply. Any motion must be separately filed."). The court acknowledges that Mr. Crossett is proceeding pro se, but that does not excuse his obligation to comply with all procedural rules. *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'" (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992))).

[28] ECF No. 30.

Second, the issue whether there was an enforceable contract between Mr. Crossett and Turo is likewise reserved to the arbitrator.

    A.  <u>The Issue of the Arbitrability of Mr. Crossett's Claims Is Reserved to the Arbitrator</u>.

The arbitrator, not the court, must decide whether Mr. Crossett's claims in this case are arbitrable. The issue of whether claims are arbitrable is governed by the FAA.[29] Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements."[30] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[31]

---

[29] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (providing that the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]"); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017) ("[I]ssues of arbitrability are governed by the [FAA]."); *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) ("The FAA applies to all arbitration agreements 'involving commerce' . . . ." (quoting 9 U.S.C. § 2)).

[30] *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (stating that section 2 of the FAA reflects "the fundamental principle that arbitration is a matter of contract" and that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms" (citation modified)); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (providing that the purpose of enacting the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts").

[31] 9 U.S.C. § 3.

"[Q]uestions of arbitrability encompass two types of disputes: (1) disputes about '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement,' and (2) threshold disputes about '*who should have the primary power to decide*' whether a dispute is arbitrable."[32] "[C]ourts must address the second type of dispute first. In other words, the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable."[33]

The United States Supreme Court has held that, under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[34] "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability[,] [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[35] "Clear and unmistakable evidence of an agreement to arbitrate arbitrability includes . . . 'an

---

[32] *Belnap*, 844 F.3d at 1280 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 944-45 (1995)) (emphasis in original).

[33] *Id.* at 1281 (emphasis in original).

[34] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (citation modified); *Belnap*, 844 F.3d at 1280 ("[T]he Supreme Court has held that when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010))).

[35] *First Options of Chicago, Inc.*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (fourth and fifth alterations in original).

express agreement to do so.'"[36] Such clear and unmistakable evidence also includes the incorporation of arbitration rules into the parties' agreement.[37]

Here, both types of clear and unmistakable evidence are present. First, the parties have expressly agreed that the issue of arbitrability is reserved to the arbitrator. Indeed, the Agreement to Arbitrate in the Terms provides that "the Parties *expressly agree* that this Agreement to Arbitrate encompasses all disputes or claims pertaining to the validity, enforceability, or scope of this Agreement to Arbitrate and any such disputes or claims will be referred to binding arbitration and will be *resolved by the arbitrator and not a court*."[38]

Second, both the FairClaims Arbitration Rules and Procedures and the AAA Commercial Arbitration Rules are incorporated into the Terms. Specifically, the Terms provide that: (1) the "Agreement to Arbitrate evidences a transaction involving interstate commerce and is therefore governed by the [FAA] and the applicable procedural rules of FairClaims or [the] AAA, as

---

[36] *Getzelman v. Trustwave Holdings, Inc.*, No. 13-cv-02987-CMA-KMT, 2014 WL 3809736, at *2 (D. Colo. Aug. 1, 2014) (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S. at 79-80 (Stevens, J., dissenting)).

[37] *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018) ("[W]hen contracting parties incorporate the AAA rules into a broad arbitration agreement, as was the case here, such an incorporation clearly and unmistakably evinces their intent to arbitrate arbitrability." (citing *Belnap*, 844 F.3d at 1281); *Belnap*, 844 F.3d at 1281-84 (concluding that the parties clearly and unmistakably agreed to arbitrate arbitrability when they incorporated Judicial Arbitration and Mediation Services rules into their agreement); *Messerly Concrete, LC v. GCP Applied Techs., Inc.*, No. 1:21-cv-00074-DBB, 2021 WL 3145782, at *3 (D. Utah July 26, 2021) ("[T]he Tenth Circuit has determined that incorporation of the AAA and its rules shows a clear and unmistakable intent to have an arbitrator decide arbitrability." (citing *Dish Network L.L.C.*, 900 F.3d at 1246)); *Getzelman*, 2014 WL 3809736, at *3 (citing several cases for the proposition that incorporation of arbitration rules into an agreement constitutes clear and unmistakable evidence of the parties' "intent to arbitrate all matters, including the question of arbitrability");

[38] ECF No. 28-1 at 40 of 57 (emphasis added).

applicable";[39] (2) "[t]he arbitration will be conducted by FairClaims in accordance with its Arbitration Rules and Procedures effective at the time a claim is made";[40] and (3) "[i]n the event FairClaims declines to or is unable to adjudicate the claim, the arbitration will be conducted by the AAA under its Commercial Arbitration Rules, as modified by this Agreement to Arbitrate."[41] Further, the arbitrator is granted the power to decide threshold arbitrability issues under both the FairClaims Arbitration Rules and Procedures[42] and the AAA Commercial Arbitration Rules.[43] Accordingly, the parties clearly and unmistakably agreed to have the arbitrator determine the arbitrability of Mr. Crossett's claims in this case, and, therefore, Defendants' motion to compel arbitration and stay proceedings should be granted.

> B. The Issue of Whether There Was an Enforceable Contract Between Mr. Crossett and Turo Is Reserved to the Arbitrator.

Mr. Crossett purported inability to access the Terms does not alter the conclusion that Defendants' motion to compel arbitration and stay proceedings should be granted because the arbitrator, not the court, must decide whether there was an enforceable contract between Mr. Crossett and Turo. In relevant part, section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a

---

[39] *Id.* at 40 of 57.

[40] *Id.* at 41 of 57.

[41] *Id.*

[42] ECF No. 28-2 at 9 of 31, Rule 4.2 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including objections regarding the existence, formation, enforceability, validity, or scope of an agreement to arbitrate; the arbitrability of any claim or counterclaim; or whether any conditions precedent have been satisfied or waived.").

[43] ECF No. 28-3 at 14 of 47, R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").

controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[44] In other words, section 2 of the FAA

> states that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.[45]

Thus, when a party challenges the validity of an entire contract containing an arbitration provision, the arbitrator has authority to decide threshold arbitrability issues.[46]

Given the foregoing, even if Mr. Crossett were unable to access the Terms, he does not specifically challenge the validity of the Agreement to Arbitrate separately from his attack on the Terms. Because his argument focuses on the contract as a whole, the validity of the contract based on his purported inability to access the Terms is a matter for the arbitrator, not the court.[47] For that additional reason, Defendants' motion to compel arbitration and stay proceedings should be granted.

---

[44] 9 U.S.C. § 2.

[45] *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70 (emphasis in original).

[46] *Id.* at 71-72; *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.,* 835 F.3d 1195, 1209-11 (10th Cir. 2016) (declining to resolve the plaintiffs' argument that the defendant's promise to arbitrate was illusory because that argument could "prevail only as an attack on the . . . agreement as a whole," which "must be resolved by the arbitrator").

[47] *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70-72; *Buckeye Check Cashing, Inc.*, 546 U.S. at 449; *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d at 1209-11.

## II. Mr. Crossett's Motion to Proceed In Forma Pauperis Should Be Denied.

Mr. Crossett's motion to proceed in forma pauperis should be denied because he has already paid the filing fee in this case and has not demonstrated that he qualifies to proceed in forma pauperis. Under 28 U.S.C. § 1915, a federal court may authorize a plaintiff to commence a civil case without payment of the filing fee if he submits a motion to proceed in forma pauperis that describes his assets and demonstrates a financial inability to pay the filing fee.[48] To qualify for in forma pauperis status, "a party's monthly income" must be "equal to or below 200% of the United States poverty guideline."[49] "Proceeding in forma pauperis in a civil case is a privilege, not a right—fundamental or otherwise."[50] "The decision to grant or deny in forma pauperis status under § 1915 lies within the sound discretion of the trial court."[51]

Importantly, Mr. Crossett has already paid the filing fee in this case,[52] which demonstrates that he has the financial ability to pay the fee. Further, although Mr. Crossett indicates that his personal income is below 200% of the United States poverty guideline, he states that his spouse's income is far above that limit.[53] Mr. Crossett argues that his spouse's income should not be considered in determining whether he qualifies for in forma pauperis status.[54] That argument fails because courts have consistently concluded that income of a party's

---

[48] 28 U.S.C. § 1915(a)(1); DUCivR 3-2(a)(1); *see also Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005); *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991).

[49] DUCivR 3-2(a)(1)(A).

[50] *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998) (citation modified).

[51] *Cabrera v. Horgas*, 173 F.3d 863 (Table), 1999 WL 241783, at *1 (10th Cir. Apr. 23, 1999).

[52] ECF No. 1 (acknowledging receipt of filing fee).

[53] ECF No. 30 at 2.

[54] *Id.* at 6.

spouse or other close family members is relevant to determining whether a party meets the requirements for in forma pauperis status.[55] When both Mr. Crossett's income and his spouse's income are considered, Mr. Crossett does not qualify to proceed in forma pauperis. Therefore, Mr. Crossett's motion to proceed in forma pauperis should be denied.

## RECOMMENDATION

For the reasons stated above, the court HEREBY RECOMMENDS:

1. Defendants' motion to compel arbitration and stay proceedings[56] be GRANTED.

2. Mr. Crossett's motion to proceed in forma pauperis[57] be DENIED.

## NOTICE TO PARTIES

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[58] The parties must file any objections to this Report and Recommendation within 14 days after being served with a copy of it.[59] Failure to object may constitute waiver of objections upon subsequent review.

---

[55] *See, e.g.*, *Martin v. A-1 Elec. Heat & Air, Carla Nievar*, No. CIV-16-1348-R, 2016 WL 7744448, at *1 n.2 (W.D. Okla. Dec. 20, 2016) ("Spousal income is an appropriate consideration when making a determination as to whether an applicant qualifies to proceed in forma pauperis."), *report and recommendation adopted sub nom. Martin v. A-A Elec. Heat & Air*, No. CIV-16-1348-R, 2017 WL 150041 (W.D. Okla. Jan. 13, 2017); *Zhu v. Countrywide Realty Co.*, 148 F. Supp. 2d 1154, 1156 (D. Kan. 2001) ("In a number of cases, courts have found that the income and assets of close family members are relevant to a determination of indigency under 28 U.S.C. § 1915.").

[56] ECF No. 28.

[57] ECF No. 30.

[58] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[59] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

DATED this 30th day of July 2025.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge